UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DISH NETWORK L.L.C.,

     Plaintiff,

v.                                                                    Case No:   6:15-cv-1707-Orl-41TBS

TV NET SOLUTIONS, LLC and
MOHAMMAD MUSTAFA,

     Defendants.

_____

## REPORT AND RECOMMENDATION

     Pending before the Court is Plaintiff's Motion for Default Judgment and Permanent Injunction Against Defendants TV Net Solutions, LLC and Mohammad Mustafa (Doc. 33). Upon due consideration, I respectfully recommend that the motion be **GRANTED in part** and **DENIED in part**.

## I. Background

     Plaintiff Dish Network LLC filed suit against Defendants TV Net Solutions, LLC ("TV Net"), and Mohammad Mustafa on November 13, 2012, asserting claims for copyright infringement and unfair competition (Case No. 6:12-cv-1629-Orl-41TBS). Plaintiff claimed that Defendants were involved in distributing foreign language television channels in violation of Plaintiff's exclusive rights to provide the content (Id.; Doc. 1, ¶ 7). The parties entered into a settlement agreement to resolve the 2012 case, and an Agreed Permanent Injunction and Order of Partial Dismissal (the "Injunction") was entered on June 4, 2014 (Case No. 6:12-cv-1629-Orl-41TBS, Doc. 69; Doc. 1, ¶ 8).

     The Injunction prohibits Defendants from, *inter alia*:

> advertising, distributing, broadcasting, performing, or providing any equipment or service that enables access to any of the following channels, including any content that airs on the channels, during any period for which DISH Network L.L.C. owns or holds the exclusive right to distribute, broadcast, perform, or provide any of these channels or the content that airs on these channels: Aghapy TV,[1] Al Arabiya, Al Hayat 1 also known as Al Hayah I, Al Hayat Cinema also known as Al Hayah Cinema, Al Yawm, Al Zikr, ART America, ART Movies, Dream 2, ESC, Future TV, Hekayat, IQRAA, MBC, MBC Drama, MBC Kids also known as MBC3, MBC Masr, Murr TV also known as MTV, New TV also known as Al Jadeed, Nile Drama, Noursat, ONTV, OTV, Rotana America, and any other channel or content to which DISH Network L.L.C. holds exclusive distribution or performance rights (collectively, the "Infringing Programming").

(Case No. 6:12-cv-1629-Orl-41TBS, Doc. 69 at 1-2; Doc. 1, ¶ 9).

In Paragraph 2 of the settlement agreement, Defendants agreed to pay Plaintiff $5,000,000 to settle the 2012 case (Doc. 1, ¶ 10; Doc. 28 at 1).   Paragraph 4 of the settlement agreement provides that:

> If TV Net breaches this Agreement or breaches any provision in the Agreed Permanent Injunction, and such breach is not cured by TV Net within ten (10) days of receiving notice from DISH, such notice to be provided in accordance with paragraph 19, TV Net will: (i) immediately refrain from doing any further business, lawful or unlawful, with each and every person or entity that is involved in or otherwise responsible for supplying the television and video equipment, service, channel, and content that TV Net is offering or providing at the time TV Net breaches this Agreement or violates the Agreed Permanent Injunction; and (ii) permanently refrain from engaging in any business related to the advertising, broadcasting, distributing, performing, or providing of video services or content.

(Doc. 1, ¶ 13).

---

[1] The complaint quotes the Injunction but omits reference to Aghapy TV (Doc. 1, ¶ 9).

Defendants made an initial payment of $25,000, but failed to make three bi-monthly payments due on July 27, 2014, September 25, 2014, and November 24, 2014 (Id. at ¶¶ 14, 17).   Defendants also continued to engage in "advertising, distributing, broadcasting, performing, and providing equipment and service that enables access to Infringing Programming."   (Id. at ¶ 15).   Plaintiff provided notice and the opportunity to cure these breaches of the settlement agreement and the Injunction, but Defendants failed to cure the breaches within the time allowed by the settlement agreement (Id. at ¶ 16).   Plaintiff declared the full amount of the settlement sum immediately due and made a written demand for $4,975,000 (the $5,000,000 settlement sum minus $25,000 paid), and Defendants failed to make the payment (Id. at ¶¶ 17-18).

Plaintiff filed this action on October 9, 2015, asserting one count of breach of contract for Defendants' breach of the settlement agreement.   Plaintiff seeks an award of $4,975,000 in damages, its reasonable attorney's fees and costs, pre- and post-judgment interest, and

> permanent injunctive relief enjoining TV Net from (i) doing any further business with each and every person or entity that is involved in or otherwise responsible for supplying the television and video equipment, service, channel, and content that TV Net is offering or providing at the times TV Net breached the Settlement Agreement or violated the Agreed Permanent Injunction; and (ii) engaging in any business related to the advertising, broadcasting, distributing, performing, or providing of video services or content[.]

(Id. at 5-6).   Plaintiff alleges that "[u]nless restrained and enjoined TV Net will continue to breach the Agreed Permanent Injunction by, among other things, advertising, distributing, broadcasting, performing, and providing equipment and service that enables access to Infringing Programming, causing substantial and irreparable injury to [Plaintiff] for which there is no adequate remedy at law."   (Id. at ¶ 26).

## II. Discussion

Rule 55(b) of the Federal Rules of Civil Procedure authorizes a court to enter default judgment against a party whose default has been entered by the clerk.   Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations of fact in the plaintiff's complaint.   See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).   But, "a defendant's default does not in itself warrant the court in entering a default judgment," and it "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."   Nishimatsu Const. Co., Ltd., v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]   Along with the requirement that the clerk's entry of default be proper, the court may enter a default judgment only if there is "a sufficient basis in the pleadings for the judgment entered."   Id. The party seeking default judgment must also comply with the requirements of the Servicemembers Civil Relief Act.   50 U.S.C. § 3931.

As an initial matter, I find that jurisdiction is proper pursuant to 28 U.S.C. § 1332. The Court previously determined that Plaintiff is a citizen of Colorado, Defendants are citizens of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs (Doc. 32).

Federal Rule of Civil Procedure 4(h) provides for service on a corporation, in a judicial district, by inter alia, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or service is made."   FED. R. CIV. P. 4(e)(1) and (h)(1)(a).   Section 48.062(1) Florida Statutes provides for service on a limited liability company by service on the registered

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

agent.   FLA. STAT. § 48.062(1).   Plaintiff served TV Net by serving Mustafa as its registered agent on October 16, 2015 (Doc. 14).   I find this to be good service of process on TV Net.

Defendant Mohammad Mustafa was served personally (Doc. 15).   The process server averred that based on Defendant's response to his inquiry, Mustafa is not in the military service of the United States (Id.).   The Servicemembers Civil Relief Act, 50 U.S.C. § 3931, therefore does not prevent the entry of default judgment.

Based on the foregoing, I find that the entry of default by the Clerk against both Defendants was proper.   "When service of process is properly effected, but the served party fails to respond in a timely manner, the clerk must enter a default against that party once the district court is informed of that failure."   Kelly v. Florida, 233 F. App'x 883, 885 (11th Cir. 2007) (citing FED. R. CIV. P. 55(a)).

The well pleaded averments in the complaint establish that the parties entered into the settlement agreement to resolve the claims asserted in the 2012 case, and that Defendants breached the agreement by failing to make the required payments and by violating the Injunction.   Defendants continue "advertising, distributing, broadcasting, performing, and providing equipment and service that enables access to Infringing Programming" in direct violation of the Injunction.   Plaintiff provided written notice of these breaches, but Defendants failed to cure the breaches in the time provided by the agreement.   These allegations provide a sufficient basis for the Court to enter default judgment in favor of Plaintiff on its breach of contract claim.   See Armadillo Distribution Enters., Inc. v. Hai Yun Musical Instruments Mfr. Co., No. 8:12-CV-1839-T-36EAJ, 2015 WL 6750813, at *3 (M.D. Fla. Nov. 5, 2015) (granting default judgment on breach of contract claim); J.J. Gumberg Co. v. Janis Servs., Inc., 847 So. 2d 1048, 1049 (Fla. Dist.

Ct. App. 2003) ("The elements of a breach of contract action are: (1) a valid contract; (2) a

material breach; and (3) damages."); <u>Kaloe Shipping Co. Ltd. v. Goltens Serv. Co. Inc.</u>,

315 F. App'x 877, 880 (11th Cir. 2009) ("'The elements of a breach of contract action are

(1) a valid contract; (2) a material breach; and (3) damages.'") (quoting <u>Beck v. Lazard

Freres & Co.</u>, 175 F.3d 913, 914 (11th Cir. 1999)).   The allegations and evidence

produced by Plaintiff[3] support a damages award of $4,975,000 for breach of the

settlement agreement.

The complaint seeks an award of reasonable attorney's fees and costs (Doc. 1 at

6).   But, the complaint does not establish a basis for an award of attorney's fees, Plaintiff

does not argue for an award of attorney's fees in its motion, and there is no indication that

the settlement agreement provides for an award of fees.   For these reasons, I

respectfully recommend that Plaintiff not be awarded its attorney's fees.

The complaint also seeks

> permanent injunctive relief enjoining TV Net from (i) doing any
> further business with each and every person or entity that is
> involved in or otherwise responsible for supplying the
> television and video equipment, service, channel, and content
> that TV Net is offering or providing at the times TV Net
> breached the Settlement Agreement or violated the Agreed
> Permanent Injunction; and (ii) engaging in any business
> related to the advertising, broadcasting, distributing,
> performing, or providing of video services or content[.]

(<u>Id.</u> at 5).   Plaintiff alleges that absent an injunction, Defendants will continue to breach

the Injunction and "caus[e] substantial and irreparable injury to [Plaintiff] for which there is

no adequate remedy at law."   (<u>Id.</u> at ¶ 26).   The proposed injunction mirrors the

---

[3] While the Court looks only to the allegations of the complaint to determine whether liability is established, it may consider other evidence in assessing damages.   <u>See SEC v. Smyth</u>, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

language in Paragraph 4 of the settlement agreement, which Plaintiff describes as an "exiting business" provision.   (Id. at ¶¶ 12-13).

> Before the court will issue a permanent injunction the applicant must demonstrate:
>
> > (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The Court denied without prejudice Plaintiff's first motion for default judgment (Doc. 31).   In doing so, the Court noted that the various declarations and exhibits attached to the motion were not originally submitted with the complaint.   The Court was ill-equipped to determine whether Plaintiff was entitled to an injunction because the motion relied almost exclusively on extraneous materials and failed to show how the well-pleaded allegations in the complaint establish the elements of a permanent injunction. Plaintiff was ordered to file a renewed motion for default judgment that included citations to the allegations of the complaint and showed how those allegations establish Plaintiff's entitlement to a default judgment (Id.).

Despite the Court's guidance, Plaintiff's amended motion for default judgment overwhelmingly relies on materials extraneous to the complaint.   Plaintiff's entire five page analysis of the Ebay factors lacks even a single citation to the complaint.   Plaintiff essentially argues that it is entitled to the requested injunction because Defendants' breach of the settlement agreement triggered the "exiting business" provision of the agreement.   According to Plaintiff, "Defendants' continued advertising, distributing, broadcasting, performing, and providing equipment and service that enables access to

Infringing Programming evidence Defendants' complete disregard for the Agreed Permanent Injunction and the need for the Court to enforce the 'exiting business' provision of the Settlement Agreement."   (Doc. 33 at 7-8).   Plaintiff cites to a number of cases in support of this argument, none of which involve a default judgment.   Notably absent from Plaintiff's evaluation of the <u>Ebay</u> factors is any discussion of whether Plaintiff does or does not have an adequate remedy at law.   Plaintiff argues that an injunction is necessary because of repeated violations of the Injunction, but the Court retained jurisdiction "for the purpose of enforcing th[e] permanent injunction," (Case No. 6:12-cv-1629-41TBS, Doc. 69, ¶ 7), and Plaintiff has not explained why the Court's enforcement of the Injunction would be inadequate.   To the contrary, Plaintiff argues that courts have broad authority to sanction parties for failing to comply with court orders, (Doc. 33 at 8 (citing FED. R. CIV. P. 37(b)(2)(A)), and "enjoy a 'wide discretion to fashion an equitable remedy for [civil] contempt.'"   (<u>Id.</u> (quoting <u>AmBrit, Inc. v. Kraft, Inc.</u>, 812 F.2d 1531, 1547-48 (11th Cir. 1986)) (emphasis in original).   Because of the Court's wide authority to craft an appropriate remedy, I find that the public interest would best be served by Plaintiff filing a motion to reopen the 2012 case so that it can request the commencement of a contempt proceeding against Defendants.

### III. Recommendation

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that Plaintiff's Motion for Default Final Judgment and Permanent Injunction (Doc. 33) be **GRANTED in part** and **DENIED in part**.   I respectfully recommend that judgment be entered for Plaintiff and against Defendants, jointly and severally, in the amount of $4,975,000, with interest accruing at the statutory rate.   In all other respects, I recommend that Plaintiff's motion be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on April 8, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties